E-FILED
Monday, 17 September, 2018  09:58:38 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

|  |  |  |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18-CV-3234 |
| | ) | |
| vs. | ) | Judge |
| | ) | Magistrate Judge |
| MILO ZIEMER, | ) | |
| Logan Correctional Officer KEITH BECK, | ) | |
| Logan Correctional Officer RYAN SEXTON, | ) | |
| LT. TODD SEXTON, and | ) | Jury Demand |
| Warden MARGARET BURKE, and other | ) | |
| as-yet-unidentified employees of the Illinois | ) | |
| Department of Corrections, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, JANE DOE, through her attorneys, MEYER & KISS, LLC, complains of the Defendants as follows:

## NATURE OF THE CASE

1.      Between March 1, 2017 through July 5, 2017, while incarcerated at Logan Correctional Center, Jane Doe was sexually assaulted by Defendant MILO ZIEMER ("Defendant ZIEMER") while working for him in the maintenance department. Jane Doe was not the only victim of Defendant ZIEMER. In fact, during this time period, the maintenance department at Logan Correctional Center was rife with custodial sexual misconduct. Some of the maintenance department employees would routinely bring contraband into Logan in exchange for sexual acts from inmates. These allegations were well known to inmates and staff at Logan, yet nothing was done for months, if not years. After the debauchery was finally exposed and Plaintiff finally cooperated in the investigation, Plaintiff was retaliated against by being transferred to Decatur Correctional Center.

2.      In this case, Jane Doe seeks damages against Defendant ZIEMER to compensate her for her injuries.  In addition, Jane Doe alleges that officials at Logan failed to intervene to

prevent sexual assaults and sexual harassment despite knowledge of guard-on-inmate and employee-on-inmate sexual assaults occurring in the facility.

## JURISDICTION AND VENUE

3.      The jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), as this case arises under the Eighth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983. Jurisdiction for Plaintiff's state claims is based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

4.      Venue is appropriate in the Central District of Illinois pursuant to 28 U.S.C. § 1391(b), as the events complained of occurred exclusively in this district.

### Plaintiff

5.      Plaintiff JANE DOE is a 42-year-old woman, a citizen of the United States. JANE DOE is currently out of prison on parole. Between March 1, 2017 through August 3, 2017, JANE DOE was housed at Logan Correctional Center, in the County of Logan in the State of Illinois.

### Defendants

6.      Defendant MARGARET BURKE ("Defendant BURKE") was, at the time of the occurrence alleged herein, the Warden of Logan Correctional Center ("Logan").  Her powers and responsibilities as Warden included, without limitation, responsibility for promulgating and/or enforcing rules, regulations, and procedures to ensure the safety and security of those in her custody, including Plaintiff. As Warden, Defendant BURKE was responsible for preventing staff-on-inmate violence, such as sexual assaults by guards and employees, and the adherence of each facility to the Prison Rape Elimination Act ("PREA").

7.      Additionally, at all time relevant to the events at issue in this case, Defendant BURKE was responsible for the hiring, supervision, training and retention of maintenance workers employed by IDOC and assigned to Logan, including Defendant ZIEMER

8.      Defendant ZIEMER was a maintenance worker employed by the Illinois Department of Corrections ("IDOC"), assigned to Logan at all times relevant hereto

9.      Defendant Correctional Officer KEITH BECK ("Defendant BECK") was, at the time of the occurrence alleged herein, a correctional officer employed by the Illinois Department of

Corrections (IDOC). At the time of the incident alleged herein, Defendant BECK was assigned to the maintenance unit to which Defendant ZIEMER and Plaintiff worked.

10.     Defendant Correctional Officer  RYAN SEXTON  was, at the time of the occurrence alleged herein, a correctional officer employed by the IDOC. At the time of the incident alleged herein, Defendant RYAN SEXTON was assigned to the fire safety unit in the maintenance building where Defendant ZIEMER and Plaintiff worked.

11.     Defendant TODD SEXTON was a supervisory officer at Logan and a member of Logan's Internal Affairs Department ("IA") at the time of the events giving rise to this case. Defendant TODD SEXTON is in charge of investigating inmate and staff misconduct at Logan. On information and belief, Defendant TODD SEXTON was aware of the skulduggery occurring in the maintenance department at Logan, yet failed to bring a stop to it. Upon information and belief, Defendant TODD SEXTON is RYAN SEXTON's brother and knew that RYAN SEXTON was aware of the improper behavior going on in the maintenance building but failed to prevent it from occurring.

12.     All of the defendants were, at the time of the occurrence alleged herein, employees of  IDOC assigned to Logan in Illinois.  They engaged in the conduct complained of in the course of their employment with the IDOC and while they were on duty.  They are sued in their individual capacities.

13.     At all times material to this complaint, defendants were acting under color of state law, ordinance, and/or regulation.

### Facts Common to All Counts

14.     Plaintiff was an inmate in IDOC from May 2015 to August 2018.

15.     Plaintiff was housed in Logan until July 5, 2017, when she was transferred to Decatur Correctional Center.

16.     In December 2015, Plaintiff began to work for the outside maintenance crew.

17.     In March 2017, Plaintiff transferred to the inside maintenance crew.

18.     Plaintiff was assigned to work with Defendant ZIEMER as an electrician's assistant.

19.     Plaintiff and one other  inmate were the only two people who worked with Defendant ZIEMER as electricians.

-3-

20.     Work assignments in the maintenance department were highly sought after by the inmates as there were many perks associated with the work.

21.     The normal work hours for the maintenance department were from 8:00 a.m. until 2:30 p.m., unless an inmate was out on a job.

22.     The maintenance department comprised an electrical department,  plumbing department, carpentry department, steamfitter department and welding department. The electrical department had two supervisors, Defendant ZIEMER and someone named Chad. The plumbing department had two supervisors named Rod and Jack. The carpentry department had two supervisors named Al and Jarred. The steamfitter supervisor was Hayward. The welding supervisor was called J.P. Above all of these supervisors was an individual named Dwayne. Each department had their own area in the maintenance building. Defendant ZIEMER had a private office with a door that locked from the inside, as did Chad, Rod and Jack.

23.     There were no cameras inside the maintenance building. This fact was well known by the workers and the supervisors.

24.     From some time in 2016 until Plaintiff's transfer to Decatur, Defendant BECK was the sole correctional officer working in the tool room in the maintenance building.

25.     Defendant RYAN SEXTON was assigned to fire safety and had an office in the maintenance building.

26.     Within the first week of working with Defendant ZIEMER, he began to inappropriately touch and fondle Plaintiff.

27.     Numerous times, Plaintiff would be working alone with Defendant ZIEMER. There were no policies in place when Plaintiff worked in the maintenance department that forbid workers to be alone with the supervisors.

28.     Defendant ZIEMER would also keep Plaintiff in the maintenance building after 2:30 p.m., and would personally take her back to her housing unit right before the 3-11 shift count. Defendants RYAN SEXTON and BECK did not prevent Defendant MILO from keeping Plaintiff in the maintenance building past 2:30 p.m.

29.     In late April or early May 2017, Defendant MILO took Plaintiff to a staff bathroom in the maintenance building and forced her to perform oral sex on him.

-4-

30.     Defendant MILO continued to sexually harass Plaintiff, including having Plaintiff sit on his lap.

31.     Defendant ZIEMER threw a birthday party for Plaintiff in late May 2017. At the party, Defendant MILO brought in balloons and cake. Defendant MILO also gave Plaintiff a hair straightener. The balloons, cake and hair straightener was all contraband.

32.     At some point in mid-May 2017, Defendant RYAN SEXTON told Plaintiff that he did not walk to the back of the maintenance area because he did not want to see what was going on between the maintenance staff and their inmate workers. Plaintiff understood this to mean that Defendant RYAN SEXTON was aware of the misconduct occurring in the maintenance building.

33.     Throughout the time Plaintiff was working in the maintenance department, Defendant BECK rarely left his office. During a conversation with Defendant BECK, Plaintiff inquired why he did not do rounds in the maintenance building. Defendant BECK implied that if he did, he would see things he would have to report. Additionally, Defendant BECK warned Plaintiff about Defendant ZIEMER.

34.     Sometime in June 2017, the Illinois State Police came to the prison and shut the maintenance department down for an investigation.

35.     When the Illinois State Police left, Plaintiff went back to work in the maintenance department for one day.

36.     Plaintiff was fired the next day.

37.     Around this time, Defendant ZIEMER and Jack came to Plaintiff's housing unit and took Plaintiff into the basement.

38.     Defendant ZIEMER and Jack threatened Plaintiff to remain silent about what was occurring in the maintenance department. They further informed Plaintiff of what happens to inmates that talk. Jack gave Plaintiff examples of what happened to inmates that talked while he worked in Pontiac Correctional Center.

39.     A short time after this, Defendant TODD SEXTON summoned Plaintiff for an interview about the maintenance department.

40.     At first, Plaintiff did not say anything because she was afraid of retaliation.

41.     Defendant TODD SEXTON then told Plaintiff that he was going to have her

-5-

immediately and involuntarily transferred from Logan to Decatur.

42.     Plaintiff did not want to be transferred to Decatur.

43.     Defendant TODD SEXTON told Plaintiff that if she cooperated with him, he would have her transferred back to Logan.

44.     Decatur was very difficult for Plaintiff. She refused housing and was placed in administrative segregation.

45.     Plaintiff agreed to tell Defendant TODD SEXTON what was occurring in the maintenance department. However, after she spoke with him, he did not transfer Plaintiff back to Logan.

46.     On information and belief, Plaintiff's transfer to Decatur and the refusal to transfer her back to Logan, were carried out by Defendants TODD SEXTON and BURKE in retaliation for Plaintiff's information and complaints about the maintenance department. These Defendants acted with the knowledge that it would be harmful to Plaintiff.

47.     On information and belief, Defendant ZIEMER abused other woman at Logan in the same way he abused Plaintiff. Other IDOC personnel at Logan, including but not limited to Defendants TODD SEXTON, RYAN SEXTON, and KEITH BECK, knew as early as January 2017 that Defendant ZIEMER was engaging in this pattern of abuse.

48.     On information and belief, other as-yet-unidentified Defendants were substantially aware that Defendant ZIEMER and other staff in the maintenance department were sexually abusing prisoners at Logan, and failed to take reasonable steps to prevent it from continuing. As a result of these Defendants' failing to intervene to stop this activity, Plaintiff's constitutional rights were violated by Defendant ZIEMER.

49.     On or about December 11, 2017, Defendant ZIEMER was charged with five counts of custodial sexual misconduct in Logan County Circuit Court in the case of People v. Milo J. Ziemer, 17-CF-208. Counts four and five deal with the assaults experienced by Plaintiff. Counts one through three involve a different inmate at Logan and stem from an incident that occurred in January 2017.

50.     As a result of the Defendants' wrongful acts described herein, Plaintiff suffered and continues to suffer physical and psychological injuries, pain, suffering, severe mental distress,

3:18-cv-03234-SEM-TSH  # 1  Page 7 of 13

anguish, and humiliation.

## COUNT I
## DEFENDANT VIOLATED THE EIGHTH AMENDMENT
### (Unnecessary and Wanton Infliction of Pain)
(vs. MILO ZIEMER)

51.    Plaintiff realleges paragraphs 1 through 50 of the Facts Common to All Counts as if they were set forth in full in this Count One.

52.    The actions of Defendant MILO ZIEMER in forcing Plaintiff to engage in sexual acts constituted unnecessary and wanton infliction of pain and were done maliciously and sadistically for the very purpose of causing harm, and not in furtherance of any legitimate penological purpose, in violation of Plaintiff's rights under the Eighth Amendment to be free from cruel and unusual punishment, as made applicable to the states by the Fourteenth Amendment.

**WHEREFORE**, Plaintiff requests that the Court enter a judgment in favor of Plaintiff and against Defendant MILO ZIEMER for actual or compensatory damages.  Additionally, because the Defendant acted maliciously, willfully, wantonly, and/or in reckless disregard for the Plaintiff's constitutional rights, Plaintiff requests that she be awarded punitive damages from this Defendant. Plaintiff also requests that she be awarded her costs and attorney's fees pursuant to 42 U.S.C. § 1983, and whatever additional relief this Court deems equitable and just.

## COUNT II
## DEFENDANTS FAILED TO PROTECT PLAINTIFF
## IN VIOLATION OF HER EIGHTH AMENDMENT RIGHTS
### (Deliberate Indifference to Need for Protection)
(Defendants ZIEMER and BURKE)

53.    Plaintiff realleges paragraphs 1 through 50 of the Facts Common to All Counts as if they were set forth in full in this Count Two.

54.    Logan housed exclusively female prisoners.

55.    Defendant MILO ZIEMER was permitted to be alone with female prisoners in the maintenance building where there are no cameras.

56.     Defendant MILO ZIEMER was permitted take Plaintiff into a staff bathroom without a female officer present.

57.     Numerous national standards and international treaties and standards recognize the danger posed to female inmates who are guarded by males without a female officer present.

58.     There have been numerous instances within the Illinois Department of Corrections where male guards have sexually abused female inmates that they were supposed to be guarding, including recent incidents at Logan involving Richard Macleod.

59.     Upon information and belief, Defendant MILO ZIEMER had prior allegations made against him regarding improper contact with female inmates.

60.     Upon information and belief, Defendants BURKE had actual knowledge of this pattern of sexual abuse.

61.     Despite the established standards, the incidents of sexual abuse, and Defendants' actual knowledge of this history of sexual abuse, Defendant BURKE failed to implement policies and procedures to protect female prisoners, including Plaintiff, who were working in the maintenance building at Logan.

62.     Between March 2017 and July 5, 2017, and for a period of time prior thereto, Defendant BURKE, as warden of Logan, was responsible for the creation, implementation, oversight, and supervision of all policies and procedures followed by IDOC employees at Logan. Between March 2017 and July 5, 2017, and for a period of time prior thereto, Defendant BURKE knew or should have known of a widespread practice of IDOC employees, specifically the maintenance employees at Logan, who engaged in sexual assaults of inmates, by way of direct reporting, annual PREA Compliance Reports, John Howard Association Investigations, grievances, training, s reports from counselors, meetings, and lawsuits.

63.     Defendant BURKE's lack of regard for and conscious disregard for Plaintiff's safety and security resulted in her sexual assaults at the hands of Defendant ZIEMER

64.     The failure of Defendant BURKE to enact appropriate policies and procedures constituted willful and reckless conduct and/or deliberate indifference to her need for protection, and thus violated Plaintiff's rights under the Eighth Amendment to be free from cruel and unusual punishment, as made applicable to the states by the Fourteenth Amendment.

65.     As a direct and proximate result of the above-described violation of Plaintiff's constitutional right to be free from cruel and unusual punishment by Defendant BURKE, Plaintiff suffered and continues to suffer physical and psychological injuries, pain, suffering, severe mental distress, anguish, and humiliation.

**WHEREFORE**, Plaintiff requests that the Court enter a judgment in favor of Plaintiff and against Defendant BURKE, for actual or compensatory damages. Additionally, because Defendant BURKE acted maliciously, willfully, wantonly, and/or in reckless disregard for the Plaintiff's constitutional rights, Plaintiff requests that the Court award her punitive damages from Defendant BURKE. Plaintiff also requests that the Court award her costs and attorneys' fees pursuant to 42 U.S.C. § 1988, and whatever additional relief this Court deems equitable and just.

## COUNT III
### DEFENDANT FAILED TO PROTECT PLAINTIFF
### IN VIOLATION OF HER EIGHTH AMENDMENT RIGHTS
**(Deliberate Indifference to Need for Protection)**
(Defendants RYAN SEXTON and KEITH BECK)

66.     Plaintiff realleges paragraphs 1 through 50 of the Facts Common to All Counts as if they were set forth in full in this Count Three.

67.     Logan houses exclusively female prisoners.

68.     Between March 2017 and July 5, 2017 Plaintiff was sexually assaulted by Defendant ZIEMER under the noses of Defendant RYAN SEXTON and KEITH BECK while they were assigned to the maintenance building.

69.     Defendants RYAN SEXTON and KEITH BECK permitted Plaintiff to be alone with Defendant ZIEMER and stay after work hours with Defendant ZIEMER in the maintenance building.

70.     Numerous national standards and international treaties and standards recognize the danger posed to female inmates who are guarded by male officers without a female officer present.

71.     There have been numerous instances within the Illinois Department of Corrections where male guards have sexually abused female inmates whom they were supposed to be guarding.

72.     Upon information and belief, Defendants RYAN SEXTON and KEITH BECK had actual knowledge of this pattern of sexual abuse, specifically that it was occurring in the maintenance

department.

73.     Despite the established standards, the incidents of sexual abuse, and Defendants' actual knowledge of this history of sexual abuse, Defendants RYAN SEXTON and KEITH BECK allowed Defendant ZIEMER to be alone with Plaintiff, even after they both had warned Plaintiff to be careful of Defendant ZIEMER.

74.     The lack of regard for and conscious disregard for Plaintiff's safety and security by Defendants RYAN SEXTON and KEITH BECK resulted in her sexual assault.

75.     Allowing Defendant ZIEMER to be alone with Plaintiff and in a staff bathroom without another officer being present constituted willful and reckless conduct and/or deliberate indifference to Plaintiff's need for protection, and thus violated Plaintiff's rights under the Eighth Amendment to be free from cruel and unusual punishment, as made applicable to the states by the Fourteenth Amendment.

76.     The failure of Defendants RYAN SEXTON and KEITH BECK to protect Plaintiff constituted willful and reckless conduct and/or deliberate indifference to her need for protection, and thus violated Plaintiff's rights under the Eighth Amendment to be free from cruel and unusual punishment, as made applicable to the states by the Fourteenth Amendment.

77.     As a direct and proximate result of the above-described violation of Plaintiff's constitutional right to be free from cruel and unusual punishment by Defendants RYAN SEXTON and KEITH BECK, Plaintiff suffered and continues to suffer physical and psychological injuries, pain, suffering, severe mental distress, anguish, and humiliation.

**WHEREFORE**, Plaintiff requests that the Court enter a judgment in favor of Plaintiff and against Defendants RYAN SEXTON and KEITH BECK for actual or compensatory damages. Additionally, because Defendants RYAN SEXTON and KEITH BECK acted maliciously, willfully, wantonly, and/or in reckless disregard for the Plaintiff's constitutional rights, Plaintiff requests that the Court award her punitive damages from these Defendants.  Plaintiff also requests that the Court award her costs and attorneys' fees pursuant to 42 U.S.C. § 1988, and whatever additional relief this Court deems equitable and just.

## COUNT IV
## DEFENDANT ASSAULTED AND BATTERED PLAINTIFF
### (Pendent State Claim - Assault and Battery)
(Defendant MILO ZIEMER)

78.     Plaintiff realleges paragraphs 1 through 50 of the Facts Common to All Counts as if they were set forth in full in this Count Four.

79.     The actions of Defendant MILO ZIEMER in sexually assaulting Plaintiff, were done intentionally, willfully and wantonly, or with such reckless disregard for their natural consequences as to constitute the torts of assault and battery under the laws and constitution of the State of Illinois, and did directly and proximately cause the physical and psychological injuries, pain and suffering, severe mental distress, anguish, humiliation, and loss of liberty as alleged above.

**WHEREFORE**, Plaintiff requests that the Court enter a judgment in favor of Plaintiff and against Defendant MILO ZIEMER for actual or compensatory damages.  Additionally, because the Defendant acted maliciously, willfully, wantonly, and/or in reckless disregard for the Plaintiff's constitutional rights, Plaintiff requests that she be awarded punitive damages from this Defendant. Plaintiff also requests that she be awarded her costs and whatever additional relief this Court deems equitable and just.

## COUNT V
## DEFENDANT SEXUALLY ABUSED DEFENDANT
### (Pendent State Claim - Sexual Abuse)
(Defendant MILO ZIEMER)

80.     Plaintiff realleges paragraphs 1 through 50 of the Facts Common to All Counts as if they were set forth in full in this Count Five.

81.     The acts of Defendant ZIEMER between March 2017 and July 5, 2017, as described above, were done intentionally, willfully and wantonly, or with such reckless disregard for their natural consequences as to constitute the tort of sexual abuse under the laws and constitution of the State of Illinois, and did directly and proximately cause the physical and psychological injuries, pain and suffering, severe mental distress, anguish, humiliation, and loss of liberty, as alleged above.

**WHEREFORE**, Plaintiff requests that the Court enter a judgment in favor of Plaintiff and against Defendant MILO ZIEMER for actual or compensatory damages. Additionally, because the

Defendant acted maliciously, willfully, wantonly, and/or in reckless disregard for the Plaintiff's constitutional rights, Plaintiff requests that she be awarded punitive damages from this Defendant. Plaintiff also requests that she be awarded her costs and whatever additional relief this Court deems equitable and just.

## COUNT VI
## DEFENDANT INTENTIONALLY INFLICTED
## EMOTIONAL DISTRESS UPON PLAINTIFF
### (Pendent State Claim - Intentional Infliction of Emotional Distress)
(Defendant MILO ZIEMER)

82.    Plaintiff realleges paragraphs 1 through 50 of the Facts Common to All Counts as if they were set forth in full in this Count Six.

83.    The acts of Defendant ZIEMER between March 2017 and July 5, 2017, as described above, constitute extreme and outrageous conduct and were done in a wanton and willful manner.

84.    Defendant ZIEMER intended that his conduct, as set forth above, should inflict severe emotional distress and/or knew that there was a high probability that his conduct would cause severe emotional distress.

85.    The conduct of Defendant ZIEMER, as set forth above, did in fact cause Plaintiff to suffer severe emotional distress.

**WHEREFORE**, Plaintiff requests that the Court enter a judgment in favor of Plaintiff and against Defendant ZIEMER for actual or compensatory damages.  Additionally, because the Defendant acted maliciously, willfully, wantonly, and/or in reckless disregard for the Plaintiff's constitutional rights, Plaintiff requests that she be awarded punitive damages from this Defendant. Plaintiff also requests that she be awarded her costs and whatever additional relief this Court deems equitable and just.

## COUNT VII
## FIRST AMENDMENT RETALIATION
(Defendants BURKE and TODD SEXTON)

86.    Plaintiff realleges paragraphs 1 through 50 of the Facts Common to All Counts as if

-12-

they were set forth in full in this Count Seven.

87.     In the manner described more fully above, Defendants BURKE and TODD SEXTON retaliated against Plaintiff for engaging in protected First Amendment activity when she spoke about Defendant ZIEMER's misconduct and the overall misconduct occurring in the maintenance building

88.     The misconduct described in this count was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Plaintiff's clearly established constitutional rights, and not for any legitimate penological purpose.

89.      As a result of Defendants BURKE and TODD SEXTON's retaliatory actions, Plaintiff suffered harm.

**WHEREFORE**, Plaintiff requests that  the Court enter a judgment in favor of Plaintiff and against Defendants BURKE and TODD SEXTON, for actual or compensatory damages. Additionally, because Defendants BURKE and TODD SEXTON acted maliciously, willfully, wantonly, and/or in reckless disregard for the Plaintiff's constitutional rights, Plaintiff requests that the Court award her punitive damages from Defendants BURKE and TODD SEXTON. Plaintiff also requests that the Court award her costs and attorneys' fees pursuant to 42 U.S.C. § 1988, and whatever additional relief this Court deems equitable and just.

Respectfully submitted,

/s/ Louis J. Meyer
*Counsel for the Plaintiff*

Louis J. Meyer
Daniel P. Kiss
Meyer & Kiss, LLC
311 West Stratford Drive
Peoria, Illinois 61614
p. 309.713.3751
e. louismeyer@meyerkiss.com

-13-